# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
CAUSE OF ACTION INSTITUTE,              )
                                        )
          Plaintiff,                    )
                                        )
          v.                            )    Civil Action No. 14-1407 (EGS)
                                        )
INTERNAL REVENUE SERVICE,               )
*et al.*                                )
                                        )
          Defendants.                   )
_____)

## MEMORANDUM OPINION

Plaintiff Cause of Action Institute ("Cause of Action")
sued the Internal Revenue Service ("IRS") to obtain records
under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA").
Currently pending before the Court are the parties' cross-
motions for summary judgment. Upon consideration of the motions,
the responses and replies thereto, the applicable law, and the
entire record, the Court **GRANTS** the IRS's motion for summary
judgment and **DENIES** Cause of Action's cross-motion for summary
judgment.

## I.   BACKGROUND

In April 2009, White House Counsel Gregory Craig issued a
memorandum advising "all federal agency and department general
counsels to consult with the White House on all document
requests that may involve documents with 'White House

1

equities.'" Compl., ECF No. 1 ¶¶ 1-3; Pl.'s Statement of

Undisputed Material Facts ("Pl.'s SUMF"), ECF No. 55-2 ¶ 1.

Concerned about the White House's involvement in the FOIA

process, Cause of Action requested the following records from

the IRS:

> All records, including but not limited to e-
> mails, letters, meeting records, and phone
> records, reflecting communications between
> IRS FOIA staff or IRS Chief Counsel's office
> and the White House Counsel's office
> concerning records forwarded by the IRS for
> White House review in connection with
> document requests by Congress, the U.S.
> Government Accountability Office, or FOIA
> requesters.

Compl., ECF No. 1 ¶ 17; Pl.'s SUMF ¶ 2.[1] The request, which was

submitted on May 29, 2013, sought records from "January 2009 to

the present." *Id.* The IRS acknowledged receipt of Cause of

Action's request on June 25, 2013, but then proceeded to ask for

numerous extensions of time to respond. Compl., ECF No. 1 ¶¶ 18-

23; Pl.'s SUMF ¶¶ 3-4. When Cause of Action filed this action on

August 18, 2014, the IRS had not yet produced any responsive

records or provided a final determination as to plaintiff's FOIA

request. Pl.'s SUMF ¶¶ 5, 7.

---

[1]    Cause of Action sent substantially similar FOIA requests to
eleven other government agencies as well. *See* Compl., ECF No. 1
¶ 16. Although this lawsuit initially included those agencies,
*see generally id.*, Cause of Action eventually dismissed them
from this action after receiving the requested records, *see*
Stip. of Dismissal, ECF No. 57; Stip. of Dismissal, ECF No. 68.

According to the declarations submitted by the IRS in support of its motion for summary judgment, the IRS first began searching for records responsive to Cause of Action's request on August 21, 2013, approximately three months after the date of plaintiff's request. *See* Decl. of A.M. Gulas ("Gulas Decl."), Def.'s Mot. for Summ. J. Ex. 1, ECF No. 51-3 ¶ 5. The IRS interpreted Cause of Action's FOIA request as "seeking records reflecting communications between the IRS FOIA staff, or Chief Counsel, and the White House Counsel's office, relating to records forwarded by the IRS FOIA staff, or Chief Counsel, to the White House Counsel's office to review before such records are provided to Congress, GAO or FOIA requesters." *Id.* ¶ 4. Based on this interpretation and her knowledge of "the IRS's functions and procedures," Ms. Gulas determined that three offices were the most likely to have potentially responsive records: (1) the Office of the Chief Counsel; (2) the Executive Secretariat Correspondence Office ("ESCO"); and (3) the Office of Disclosure, which is within the Office of Privacy, Governmental Liaison and Disclosure ("PGLD"). *Id.* ¶ 8. In searching for records in these offices, the IRS generally limited its search to records created through May 29, 2013, the date on which Cause of Action made its FOIA request. *Id.* ¶ 3.

With respect to the Office of the Chief Counsel, the IRS focused its search on the Office of the Associate Chief Counsel

(Procedure & Administration) because that office "has responsibility for disclosure, privacy and FOIA issues." Gulas Decl., ECF No. 51-3 ¶ 27. Although the office has seven branches, all of the attorneys "who handle matters involving disclosure laws are located in branches 6 and 7." *Id.* ¶ 28. Accordingly, Ms. Gulas sent a request to "all attorneys and branch chiefs in branches 6 and 7" asking them to search their email for responsive records dated within the relevant time period. *Id.* ¶ 29. Ms. Gulas directed these individuals to use the following terms in conducting their searches: "White House," "WH," "White House Counsel," "WH Counsel," "consultation," "consult," "WH equities," "EOP," and "GAO." *Id.* In addition, the emails of two former attorneys — including the Deputy Associate Chief Counsel for Procedure and Administration for disclosure matters during most of the relevant time period — were also searched. *Id.* ¶ 30. These searches did not yield any responsive documents. *Id.* ¶¶ 29-31.

The IRS also searched ESCO, which is the office that receives "all correspondence addressed to the Commissioner, as well as correspondence referred to the IRS by the White House, by the Office of Treasury Legislative Affairs, and by the Treasury Executive Secretariat." *Id.* ¶ 15. ESCO uses a document-management system called E-Trak to store such correspondence. *Id.* ¶ 16. To find documents responsive to Cause of Action's

request, the IRS searched E-Trak using the following terms:
"White House," "Craig," "Obama," "Executive Office of the
President," "EOP," "GAO," "FOIA," "Freedom of Information Act,"
"WH," "WH equities," "consultation," and "consult." *Id.* ¶¶ 21-
23. Although these searches yielded 4,627 hits, after further
review the IRS determined that none of those documents were in
fact responsive. *Id.* ¶¶ 24-25.

Finally, the IRS searched the Office of Disclosure, which
is the office responsible for responding to FOIA requests. *Id.* ¶
9. Although John Davis, the Deputy Associate Director of the
office, confirmed that the office "had not coordinated any
responses to FOIA requests with the White House Counsel's
office" and that he was not "aware of a memorandum from White
House Counsel Gregory Craig," *see id.* ¶¶ 12-13, the IRS
nonetheless searched two systems within the Office of
Disclosure: the Automated Freedom of Information Act System
("AFOIA") and the Electronic Disclosure Information System
("EDIMS"), *see* Decl. of Jennifer Black ("Black Decl."), Def.'s
Mot. for Summ. J. Ex. 2, ECF No. 51-4 ¶ 14. These databases are
used "to track and process all requests for agency records" made
pursuant to FOIA. Black Decl., ECF No. 51-4 ¶¶ 10-11. The IRS
searched the case history notes, "which should contain
references to any referral or consultation with another agency,"
using the following terms: "WH," "EOP," "White House," "Obama,"

and "Executive Office of the President." *Id.* ¶ 14. These searches yielded 112 hits, none of which were deemed responsive to Cause of Action's FOIA request after further review. *Id.* ¶ 17.

On April 3, 2015 — nearly two years after Cause of Action sent its FOIA request — the IRS sent a "final response letter" indicating that it had determined that it did not have any responsive records. Def.'s Mot. for Summ. J. Ex. 3, ECF No. 51-5; Pl.'s SUMF ¶ 7. The eleven other government agencies to which Cause of Action had sent substantially similar FOIA requests all ultimately produced responsive records. Pl.'s SUMF ¶ 8.

Both parties now move for summary judgment. The IRS asserts that it is entitled to summary judgment because there is no genuine dispute of material fact as to whether the agency conducted an adequate search for records. *See* Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def.'s Mem."), ECF No. 51-1. In support of its motion, the IRS offers declarations from two individuals. The first declaration is from A. M. Gulas, a senior counsel in the Office of the Associate Chief Counsel who was assigned to assist the Department of Justice in litigating this case. *See* Gulas Decl., ECF No. 51-3 ¶ 2. Ms. Gulas has served as a disclosure attorney in the IRS's Office of Chief Counsel for over twenty-one years. *Id.* ¶ 1. The second declaration is from Jennifer Black, the attorney who succeeded Ms. Gulas when she

retired in August 2015. *See* Black Decl., ECF No. 51-4 ¶ 1. These declarations outline the searches undertaken by the IRS to locate records responsive to Cause of Action's FOIA request. Cause of Action opposes the motion and moves for summary judgment, arguing that the IRS's search was unduly narrow for a host of reasons. *See* Pl.'s Mem. in Opp. to IRS Mot, for Summ. J. and Cross-Motion for Summ. J. ("Pl.'s Opp."), ECF No. 55-1.

## II.  LEGAL STANDARD

FOIA requires that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules ... shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). "To fulfill its disclosure obligations, an agency must conduct a comprehensive search tailored to the request and release any responsive material not protected by one of FOIA's enumerated exemptions." *Tushnet v. U.S. Immigration & Customs Enf't*, 246 F. Supp. 3d 422, 430 (D.D.C. 2017).

The "vast majority" of FOIA cases can be resolved on summary judgment. *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). A court may grant summary judgment only if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Likewise, in ruling on cross-motions for summary judgment, the court shall grant

summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed. *See Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 658 F. Supp. 2d 217, 224 (D.D.C. 2009) (citation omitted). Under FOIA, the underlying facts and inferences drawn from them are analyzed in the light most favorable to the FOIA requester, and summary judgment is appropriate only after the agency proves that it has fully discharged its FOIA obligations. *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996) (citing *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983)).

When considering a motion for summary judgment under FOIA, the court must conduct a *de novo* review of the record. *See* 5 U.S.C. § 552(a)(4)(B). The court may grant summary judgment based on information provided in an agency's affidavits or declarations when they are "relatively detailed and non-conclusory," *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation and internal quotation marks omitted), and "not controverted by either contrary evidence in the record nor by evidence of agency bad faith," *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation and internal quotation marks omitted). Such affidavits or declarations are "accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the

existence and discoverability of other documents.'" *SafeCard Servs.*, 926 F.2d 1197 at 1200 (citation omitted).

## III. ANALYSIS

The central issue on summary judgment is the adequacy of the IRS's search.

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)); *see also Steinberg v. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994). Where a plaintiff challenges the adequacy of an agency's search, the question for the court is "'whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant.'" *Judicial Watch, Inc. v. United States Dep't of State*, 681 Fed. Appx. 2, 4 (D.C. Cir. 2017) (quoting *SafeCard Servs.*, 926 F.2d at 1201). In other words, the adequacy of a search is "generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003).

Because the adequacy of an agency's search is "measured by a 'standard of reasonableness,'" it is necessarily "'dependent

upon the circumstances of the case.'" *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (citations omitted). To meet its burden at summary judgment, an agency may provide "'a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials ... were searched.'" *Iturralde*, 315 F.3d at 313-14 (citation omitted). Any factual assertions in such an affidavit will be accepted as true unless the requesting party submits affidavits or other documentary evidence contradicting those assertions. *Wilson v. U.S. Dep't of Transp.*, 730 F. Supp. 2d 140, 148 (D.D.C. 2010) (citing *Neal v. Kelly*, 963 F.2d 453, 456-57 (D.C. Cir. 1992)).

Cause of Action challenges the adequacy of the IRS's search on numerous grounds. The Court examines each argument in turn.

### A. The IRS's Temporal Limitation Was Reasonable

Cause of Action argues that it was unreasonable for the IRS to limit its search to records created through May 29, 2013, the date on which Cause of Action made its FOIA request. Pl.'s Opp., ECF No. 55-1 at 6.[2] Cause of Action asserts that, instead, the IRS should have set the cut-off date for its search to "no earlier than August 23, 2013," which was the date on which the FOIA officer "started her search for responsive records." *Id.*

---

[2] When citing electronic filings throughout this opinion, the Court cites to the ECF page number, not the page number of the filed document.

According to Cause of Action, not doing so improperly permitted the IRS "'to withhold, with little or no justification, a potentially large number of relevant documents.'" *Id.* (quoting *Public Citizen v. Dep't of State*, 276 F.3d 634, 644 (D.C. Cir. 2002)).

An agency's decision to impose temporal limitations in responding to a FOIA request "is only valid when the limitation is consistent with the agency's duty to take *reasonable* steps to ferret out requested documents." *McGehee v. Cent. Intelligence Agency*, 697 F.2d 1095, 1101 (D.C. Cir. 1983). Indeed, the D.C. Circuit has cautioned against a "reflexive application of the cut-off policy to every request regardless of circumstance" and has "expressly rejected the proposition that under FOIA, the use of a time-of-request cut-off date is always reasonable." *Public Citizen*, 276 F. 3d at 643. Even so, "specific circumstances in some agencies may render an across-the-board rule reasonable" so long as the agency makes a "showing that warrants such an approach in its case." *Id.*

Here, the IRS argues that its decision to limit its search to records created "up to the date of the request" was reasonable because it simply was imposing "the specific time limit that the requester imposed on its own FOIA request." Def.'s Reply In Supp. of Mot. for Summ. J. and Opp. to Pl.'s Cross-Motion for Summ. J. ("Def.'s Reply"), ECF No. 59 at 21. It

further argues that the fact that its interpretation was reasonable is supported by Cause of Action's "failure to raise the issue in the parties' meet and confer." *Id.* at 22. In view of this latter argument, the Court agrees with the IRS. In particular, given that the IRS's cut-off date was communicated to Cause of Action during the agency's negotiations with plaintiff, and given Cause of Action's failure to object to the IRS's temporal limitation, there is no indication that the IRS improperly limited the scope of its searches under these circumstances.

## B. The IRS Properly Focused Its Search To The Relevant Offices

Cause of Action next protests that the IRS's decision to limit its search to the Office of Disclosure, the Office of the Associate Chief Counsel, and ESCO was improper. Pl.'s Opp., ECF No. 55-1 at 7-8. In particular, Cause of Action notes that "[t]here is no indication that search memoranda were sent to [PGLD] — which serves as the IRS FOIA Office" or to "sub-components of the Office of Chief Counsel." *Id.*

An agency seeking summary judgment in a FOIA case may provide "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Oglesby v. U.S. Dep't of Army*,

920 F.2d 57, 68 (D.C. Cir. 1990). To allow a district court to determine whether the search was adequate, the affidavit should also include the agency's "rationale for searching certain locations and not others." *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 92 (D.D.C. 2009). Factual assertions in such an affidavit will be accepted as true unless the requesting party submits evidence contradicting those assertions or rebutting the presumption that the agency's search was made in good faith. *Coffey v. Bureau of Land Mgmt.*, 277 F. Supp. 3d 1, 7 (D.D.C. 2017).

The IRS's declarations submitted in support of its motion for summary judgment belie Cause of Action's claim that the IRS should have searched in additional locations for responsive records. As an initial matter, although Cause of Action asserts that the agency should have searched PGLD, the declarations make clear that PGLD *was* searched for responsive records. As Ms. Gulas explained, "[w]ithin PGLD, the Office of Disclosure is responsible for responding to requests made pursuant to FOIA." Gulas Decl., ECF No. 51-3 ¶ 9. Accordingly, records within Office of Disclosure were searched. Moreover, the Deputy Associate Director of the Headquarters Office of Disclosure — who is the "highest ranking official within PGLD from the period covered by plaintiff's FOIA request" that has relevant knowledge and is currently still employed at the agency — specifically

attested that the Office of Disclosure "would have handled any FOIA request that impacted, in any way, 'White House equities.'" *See* Decl. of John H. Davis ("Davis Decl."), Def.'s Reply Ex. 4, ECF No. 59-2 ¶¶ 2-3. To the extent that Cause of Action intends to argue that the IRS should have searched other components of PGLD, Cause of Action fails to offer any factual basis that other components would be reasonably likely to possess responsive records.

Likewise, although Cause of Action complains that the IRS did not search records contained by "sub-components of the Office of Chief Counsel," *see* Pl.'s Opp., ECF No. 55-1 at 7-8, that argument also fails. After all, the IRS *did* search the Office of the Associate Chief Counsel (Procedure and Administration), which is a sub-component of the Office of Chief Counsel. *See* Gulas Decl., ECF No. 51-3 ¶ 27. Moreover, as Ms. Gulas attested, the Office of the Associate Chief Counsel (Procedure and Administration) "has responsibility for disclosure, privacy and FOIA issues." *Id.* Although that office has seven branches, the attorneys who handle matters involving FOIA requests are "located in branches 6 and 7." *Id.* ¶¶ 28-29. Cause of Action offers no basis to suggest that other sub-components of the Office of Chief Counsel may have had responsive records. Accordingly, the Court concludes that the IRS's decision to limit its search to certain branches within

the Office of the Associate Chief Counsel was reasonably calculated to discover responsive documents.[3]

## C. The IRS's Searches Were Adequate

### i. The IRS's Search of the Office of Chief Counsel Was Adequate

Cause of Action contends that the IRS's search of the Office of Chief Counsel was inadequate for two reasons: (1) because the scope of the search was unduly constrained; and (2) because the IRS confused the terms "coordination" and "consultation." Pl.'s Opp., ECF No. 55-1 at 8-9. Both arguments are unpersuasive.

First, as previously explained, the affidavits submitted by the IRS offer compelling justification for the agency's decision to limit its search to the Office of Associate Chief Counsel (Procedure and Administration). *See supra* Part III.B. Likewise,

---

[3]     Cause of Action also points to the fact that the IRS was "unaware" of the Craig Memo as evidence that the agency's search was not "robust[]." Pl.'s Opp., ECF No. 55-1 at 7-8. Cause of Action does not offer any evidence to supports its inference, and therefore fails to rebut the contrary evidence submitted by the IRS. *See, e.g.*, Gulas Decl., ECF No. 51-3 ¶ 33 ("Prior to receiving CoA's FOIA request, I had not been aware of a memorandum from White House Counsel to agency general counsels regarding consultation with the White House Counsel's office on document requests that may involve documents with White House equities."); Davis Decl., ECF No. 59-2 ¶ 5 ("To my knowledge, no [policy or practice within the Office of Disclosure that would lead the office to consult with the White House prior to releasing IRS records responsive to any FOIA request] has existed . . . at any point since January 1, 2012[.]").

the agency explained why it chose to limit its search to two branches of that division. *Id.* Ms. Gulas is a "technical expert" on FOIA matters based on her twenty-one years of experience as a disclosure attorney in the Office of Chief Counsel, *see* Gulas Decl., ECF No. 51-3 ¶¶ 1, 32-33, and her affidavit is to be accorded a "presumption of good faith" in the absence of evidence to the contrary, *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

Second, Cause of Action accuses the two senior counsels who provided affidavits in support of IRS's motion for summary judgment of confusing the terms "coordination" and "consultation" — which, according to plaintiff, have a different "technical meaning" — in responding to plaintiff's FOIA request. According to Cause of Action, these declarations, which explain that there was no "practice in the office to *coordinate* responses to FOIA requests, GAO or Congressional inquiries with the White House or White House Counsel's office," *see* Gulas Decl., ECF No. 51-3 ¶ 33 and Decl. of Jennifer Black, Def.'s Mot. for Summ. J. Ex. 2, ECF No. 51-4 ¶ 19, are inadequate to establish that there was no practice to "consult" with the White House. Pl.'s Opp., ECF No. 55-1 at 8-9. Ms. Gulas's declaration, however, confirms that she included the search terms "consultation" and "consult" in searching for records responsive to plaintiff's FOIA request. *See* Gulas Decl., ECF No. 51-3 ¶¶

23, 29. As such, the Court concludes that any purported

confusion between "coordination" and "consultation" did not

affect the adequacy of the agency's search for records.

### ii. The IRS's Search of the Executive Secretariat Correspondence Office Was Adequate

With respect to the IRS's search of ESCO, Cause of Action

complains that it is unable to determine whether the search was

adequate because the IRS's affidavits contain insufficient

information regarding the E-Trak database, which is ESCO's

document management system that tracks certain correspondence.

Pl.'s Opp., ECF No. 55-1 at 9-10. In particular, Cause of Action

states that it requires additional information regarding "the

individual employees or IRS components whose correspondence is

stored in E-Trak." *Id.* at 10.

In response, the IRS offers the supplemental declaration of

Jennifer Black. *See* Supp. Decl. of Jennifer Black ("Black Supp.

Decl."), Def.'s Reply Ex. 8, ECF No. 59-6.[4] Ms. Black explains

that "[a]ll communications" addressed to the Commissioner or

---

[4]     Although this declaration was attached to the IRS's reply
memorandum in support of its motion for summary judgment, the
Court can "'rel[y] on supplemental declarations submitted with
an agency's reply memorandum to cure deficiencies in previously
submitted declarations'" where a plaintiff has not challenged
the supplemental declaration. *See Walston v. United States Dep't
of Def.*, 238 F. Supp. 3d 57, 64 (D.D.C. 2017) (citing *DeSilva v.
U.S. Dep't of Housing and Urban Dev.*, 36 F. Supp. 3d 65, 72
(D.D.C. 2014)).

Deputy Commissioner, as well as to the Director of Legislative Affairs, were recorded in E-Trak. *Id.* ¶ 8. In addition, correspondence addressed to, among others, the President and then referred to the Office of the Commissioner or the Director of Legislative Affairs was also recorded in E-Trak. *Id.*

Cause of Action does not make any arguments with respect to the adequacy of the IRS's search in light of this information. *See* Pl.'s Reply in Supp. of Cross-Motion for Summ. J. ("Pl.'s Reply"), ECF No. 63 at 7-9. In any event, the Court notes that Cause of Action only requested communications between the White House and "IRS FOIA staff or IRS Chief Counsel's office" — and not with the Commissioner or others whose correspondence is handled by ESCO. Accordingly, in light of the IRS's searches in E-Trak using appropriate terms, the Court concludes that the agency has carried its burden to demonstrate that its search was reasonably calculated to discover documents responsive to Cause of Action's FOIA request.

### iii. The IRS's Search of the Office of Disclosure Was Adequate

Finally, Cause of Action argues that IRS's search for records within the Office of Disclosure was inadequate for two reasons: (1) because of the IRS's "unwillingness to search individual employee e-mail from that office"; (2) because the

search terms used were "inadequate to capture potentially responsive records." Pl.'s Opp., ECF No. 55-1 at 10-15.

First, whether IRS was required to search the individual email accounts of each employee in the Office of Disclosure depends on whether such a search was reasonably necessary to discover documents requested by Cause of Action's FOIA request. *See Safecard Servs.*, 926 F.2d at 1201. As the IRS's declarations make clear, the agency determined that searching employee emails was unnecessary in light of Deputy Associate Director Davis's representation that he was not aware of any consultations between the Office of Disclosure and the White House Counsel's Office with respect to FOIA requests. *See* Gulas Decl., ECF No. 51-3 ¶ 13; *see also* Davis Decl., ECF No. 59-2 ¶ 5.[5] By insisting that the IRS was required to search each employee's individual email account, Cause of Action misunderstands the standard for adequacy of an agency's search under FOIA. An agency is only required to show that "it has conducted a search *reasonably* calculated to uncover all relevant documents," *Weisberg v. U.S.*

---

[5]     The IRS also states the conducting a search of employees' email accounts would be unduly burdensome. *See Gulas Decl.*, ECF No. 51-3  ¶ 14 (attesting that it "would take one IRS IT person at least 13 years . . . to capture all of the emails of the[] 165 employees" in the Office of Disclosure). The Court agrees that such a search would impose an unreasonable burden on the IRS in light of the agency's declarations indicating that responsive documents are unlikely to exist. *See, e.g.*, *Nation Magazine, Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 891 (D.C. Cir. 1995).

*Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (emphasis added), and it need not search files or record systems that are not "*likely* to contain responsive materials," *Oglesby v. U.S. Dept. of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) (emphasis added). Here, the IRS has provided declarations explaining why responsive records were unlikely to exist within the Office of Disclosure. Moreover, Cause of Action has not pointed to any evidence calling into question the testimony of those declarants. Accordingly, the Court rejects Cause of Action's request that the IRS be required to search the individual email accounts of each employee in the Office of Disclosure.

Second, agencies generally "have discretion in crafting a list of search terms that 'they believe[] to be reasonably tailored to uncover documents responsive to the FOIA request.'" *Agility Pub. Warehousing Co. K.S.C. v. Nat'l Sec. Agency*, 113 F. Supp. 3d 313, 339 (D.D.C. 2015) (citation omitted). So long as the "search terms are reasonably calculated to lead to responsive documents, the Court should not 'micro manage' the agency's search." *Liberation Newspaper v. U.S. Dep't of State*, 80 F. Supp. 3d 137, 146 (D.D.C. 2015) (citation omitted); *see also Johnson v. Executive Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002) ("FOIA, requiring as it does both systemic and case-specific exercises of discretion and administrative judgment and expertise, is hardly an area in

which the courts should attempt to micro manage the executive branch.").

Here, Cause of Action contends that the IRS's search was inadequate because the agency failed to search for the terms "FOIA," "consult," "OHWC," "Office of White House Counsel," "WHO," and "White House Office." Pl.'s Opp., ECF No. 55-1 at 15. The IRS explains that its search of the term "White House" renders two of plaintiff's proposed terms — "Office of White House Counsel" and "White House Office" — superfluous. Def.'s Reply., ECF No. 59 at 13. In addition, the IRS avers that requiring the agency to use the term "FOIA" and "consultation" would "yield overbroad results" and that it was reasonable for the agency to craft terms specifically directed at retrieving communications with the White House. *Id.*; Black Supp. Decl., ECF No. 59-6 ¶¶ 12-13. Finally, the IRS notes that the acronyms "OHWC" and "WHO" do not appear anywhere in plaintiff's FOIA request, and plaintiff does not explain why these acronyms were "obvious" search terms whose omission made the agency's search deficient. Def.'s Reply, ECF No. 59 at 13; Black Supp. Decl., ECF No. 59-6 ¶ 14. Based on the IRS's representations, the Court concludes that the IRS's decision not to include Cause of Action's proposed additional search terms was reasonable.

## IV. Conclusion

For the foregoing reasons, the Court concludes that there is no genuine dispute of material fact as to the adequacy of the IRS's search for documents responsive to Cause of Action's FOIA request. Accordingly, the IRS's motion for summary judgement is **GRANTED**, and Cause of Action's cross-motion for summary judgment is **DENIED**. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

Signed:     **Emmet G. Sullivan**
            **United States District Judge**
            **June 12, 2018**